UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH KROHN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-07-3885 |
| | § | |
| DAVID POWERS HOMES INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT

This case arises out of alleged violations of the overtime rules contained in the Fair Labor Standards Act ("FLSA"). Now before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 19) and Defendants' Motion for Summary Judgment (Doc. 20). For the following reasons, Plaintiff's Motion is **DENIED** and Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.[1]

### I. Background

Plaintiff Elizabeth Krohn was employed by Defendant David Powers Homes ("DPH") from approximately May 1, 2005, to September 27, 2007, as a "Build on Your Homesite" ("BOYH") Sales Consultant. DPH is a builder of single-family homes in the Houston area. Initially, Krohn worked at DPH's "corporate office," but at some point she moved to DPH's office on Buffalo Speedway (the "Uptown Office"). The BOYH program involves consumers who already own a piece of property hiring DPH to build a home on that site. The Parties agree on many of Krohn's job duties: selling homes, marketing, meeting with prospective and existing clients, participating in closings, working on contracts and other paperwork, maintaining

---

[1] The Court does not authorize publication of this Order.

relationships with clients, keeping clients informed of progress, and attending sales meetings. Krohn states that she worked in one of the offices 97% of the time. (1st Krohn Aff. ¶ 5-6.) The other 3% of her time was spent visiting clients or customers at their homes. (1st Krohn Aff. ¶ 5-6.) In contrast, Defendants state that Krohn left the office one to two times a week for at least one to two hours, and they state that she engaged in marketing outside the office, attended real estate functions, showed communities to prospective buyers, visited home sites, showed existing homes, and other activities necessarily conducted outside the office. Defendants state that while Kevin Weiderhold was her manager, she spent 10-20 hours per week outside the office. Krohn alleges that when she asked for a gas card or allowance for work travel, Weiderhold told her that she did not need one because she would not be leaving the office. (1st Krohn Aff. ¶ 7.)

Defendants claim that Krohn was exempt from the overtime provisions of the FLSA as an outside salesperson or administrative employee. Plaintiff moves for summary judgment on the issue of whether she was an outside salesperson. Defendants move for summary judgment on the issues of whether Plaintiff was exempt and whether she was properly compensated, and on each of Plaintiff's other claims (retaliation, breach of contract, unjust enrichment, quantum meruit, and ERISA).

## II.  Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323, 106 S.

Ct. at 2553.  The non-moving party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  "'If the movant bears the burden of proof on an issue . . . [it] must establish beyond peradventure *all* of the essential elements' of the claim or defense."  *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1994 (5th Cir. 1986)).  The court must view all evidence in the light most favorable to the non-movant.  *See, e.g.*, *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005); *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).  If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 202 (1986).

### III.  Classification as Outside Salesperson

Under the FLSA, employers must pay employees overtime pay for work in excess of forty hours per week unless an employee is exempt.  The employer has the burden of proving that an employee is exempt.  Both Plaintiff and Defendants have moved for summary judgment on the issue of whether Plaintiff was exempt as an outside salesperson.

The FLSA exempts outside salespeople.  29 U.S.C. § 213(a)(1).  29 C.F.R. § 541.500(a) states that an "outside salesman" is an employee whose "primary duty" is "making sales within the meaning of section 3(k)" of the FLSA or "obtaining orders or contracts for services . . . for which a consideration will be paid by the client or customer."  Section 3(k) defines a "sale" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 U.S.C. § 203(k).  The employee must be "customarily and regularly engaged away from the employer's place or places of business in performing such duty." Id.  A "primary

duty" is the "principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

In determining an employee's primary duty, the Court should look at "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id*. If an employee spends at least 50% of his or her time engaged in exempt work, that work is probably the employee's primary duty. 29 C.F.R. § 541.700(b). "[W]ork performed incidental to and in conjunction with the employee's own outside sales . . . shall be regarded as exempt work" in determining the employee's primary duty. 29 C.F.R. § 541.500(b). Exempt work for an outside salesperson includes "work that furthers the employee's sales efforts," such as "writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." *Id*.

### 1. Whether Krohn Was Engaged in Sales or Obtaining Orders or Contracts for Sales

An outside salesperson must actually accept orders or complete sales, not just advertise or promote sales for his company. See *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 758-9 (W.D. Mich. 2003). Although being paid on commission is not a requirement for classification as an outside salesperson, a compensation based on commission "correlates with a finding that the employee does sales work." *Nielsen,* 302 F. Supp. 2d at 757. Also, independent solicitation of new business, as opposed to following up on leads generated by others, indicates outside sales. *See Nielsen*, 302 F. Supp. 2d at 358. Real estate salespeople generally meet the test. *See*

Department of Labor Wage and Hour Division Opinion Letter FLSA 2007-2, 2007 WL 506575 (Jan. 25, 2007) ("FLSA 2007-2").

It is undisputed that Krohn's title was "sales consultant." (Defs' M. for Summ. J. Ex. C.) She was paid on commission. (Defs' M. for Summ. J. Ex. C.) It appears from the record that she was also responsible for marketing and therefore generated at least some of her own leads. Therefore, the Court finds that Krohn was engaged in sales or in obtaining contracts for sale. No genuine issues of material fact remain on this point.

**2. Whether Krohn Worked Away From DPH's Place of Business Customarily and Regularly**

To qualify as an outside salesperson, an employee's sales must occur outside the employer's place or places of business. 29 C.F.R. § 541.502. Sales made by telephone from an employer's office or employee's home do not qualify as outside sales. 29 C.F.R. § 541.502. These outside activities must occur "customarily and regularly," which means "greater than occasional" but "less than constant" and "normally and recurrently performed every workweek." 29 C.F.R. § 541.701.

In a recent opinion letter, the Department of Labor found that a real estate salesperson who worked out of model homes or trailers was an outside salesperson because the salesperson spent one to two hours a day one or two days a week selling homes outside of that worksite. *See* FLSA 2007-2. The activities outside the worksite were "indispensable" to the sales, and the salesperson's work in the model home or trailer related to the outside sales. *Id.*

Krohn's affidavit states that she sold homes and performed the majority of her other duties in the Corporate Office or the Uptown Office. (1st Krohn Aff. ¶ 3-4.) She has also submitted the affidavit of Jodie Vasquez, who was Krohn's assistant for two months. Vasquez

states that Krohn "rarely left her office," conducted sales from her office, and sent Vasquez to show a model home.  (Vasquez Aff. ¶ 7.)  Harold Acord, another BOYH sales consultant, also stated that Krohn met with customers in her office and conducted her sales activities there.  (Acord Aff. ¶ 4.)

Defendants have submitted evidence that Krohn conducted at least some sales activity away from Defendants' offices, but this evidence also indicates that Krohn spent a significant amount of time in the office, including conducting sales activity in the office.  For example, Defendants have submitted an e-mail from Krohn to John Mingarelli stating that she was giving a sales presentation at the home of some prospective customers.  (Defs' M. for Summ. J. Ex. F, at DPH 0255.)  This e-mail, though, also refers to sales-related telephone calls made to three customers.  Likewise, Defendants submitted an e-mail from Krohn to Mingarelli in which Krohn stated that she had shown a house three times in two days, but in which she also asked Mingarelli to hire a hostess to stay in the house so that she could be in the office.  (Defs' M. for Summ. J. Ex. F, at DPH 0267.)  Another employee replied to this e-mail and said that a Realtor would keep the house open so that Krohn would not have to staff it.  (Defs' M. for Summ. J. Ex. F, at DPH 0268.)  Defendants submitted another e-mail referring to a "sales meeting" attended by Krohn, but the e-mail does not indicate whether this took place at another of Defendants' offices, or if it was a meeting to generate or complete a sale or an internal meeting of sales personnel.  (Defs' M. for Summ. J. Ex. F, at DPH 0256.)

Other e-mails submitted by Defendants indicate outside sales activity.  (Defs' M. for Summ. J. Ex. F.)  These e-mails do not, however, establish "regular" activity occurring each workweek; they indicate outside meetings of various types on occasion.  The meetings in Katy also appear to refer to meetings in Defendants' Katy office.  Defendants have also submitted

Krohn's employee expense reimbursement forms. These forms show mileage expenses "to Katy BOYL," but they do not include mileage expenses to any model homes or clients' homes. Defendants' information concerning going to meetings in other offices does not count toward time "customarily and regularly" spent away from the office. *See* 29 C.F.R. § 541.502 (referring to an employer's multiple places of business). Defendants have submitted the affidavits of John Mingarelli and Kevin Weiderhold, each specifying various amounts of time Krohn spent out of the office. However, it is not clear from either affidavit how much time Krohn spent out of the office on a regular basis doing sales work. Also, Mingarelli's affidavit includes "mandatory sales meetings at various communities in the greater Houston area," a statement that apparently refers to the internal sales meetings at various offices, in his estimate of the amount of time Krohn spent out of the office. (Mingarelli Aff. ¶ 4.) As stated above, time spent in Defendants' other offices counts as in-office work.

While Defendant has provided evidence showing that Krohn conducted some sales activity outside the office, Krohn has supplied competent summary judgment evidence showing that she spent the majority of her time in Defendants' offices and that she conducted the majority of her sales activity from those offices. Because material questions of fact remain as to how Krohn spent her time, the Court **DENIES** Plaintiff's and Defendants' Motions for Summary Judgment as to whether Krohn qualified as an outside salesperson.

**IV.  Classification as an Administrative Employee**

Defendants have moved for summary judgment on the issue of whether Plaintiff was exempt as an administrative employee. Employees "employed in a bona fide . . . administrative . . . capacity" are exempt from the overtime provisions of the FLSA. 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide administrative capacity" is one who is "[c]ompensated on a

salary or fee basis at a rate of not less than $455 per week," "[w]hose primary duty is the performance of office or non-manual work related to the management or general business operations of the employer or the employer's customers," and "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

A person is employed on a "salary basis" if he or she "regularly receives each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. Employees paid on commission are not salaried. *See Chao v. Vidtape, Inc.*, 66 Fed. Appx. 261, 264 (2d Cir. 2003). An employee is paid on a "fee basis" if he or she is paid a set amount for a "single job regardless of the time required for its completion." 29 C.F.R. § 541.605.

Krohn did not qualify for this exemption because she was paid on commission. (Defs' M. for Summ. J. Ex. C.) The regular amounts that appear on her paychecks, submitted as Defendants' Exhibit O, reflect amounts paid from the draw pool, not payment of a fixed salary. The earnings statements submitted as part of Exhibit O show this. Likewise, Krohn was not paid on a fee basis because her commission varied based on the cost of the house sold and because she was paid for multiple tasks, not for a single job.

Krohn was not an exempt administrative employee. Defendants' Motion for Summary Judgment on this issue is **DENIED**.

## V. Proper Compensation

Defendants have moved for summary judgment on the issue of whether Krohn was properly compensated. The plaintiff in an FLSA suit has the burden of proving that he or she

was not properly compensated. *See Lynch v. Jet Center of Dallas, LLC*, No. 3:05-CV-2229-L, 2007 WL 211101 (N.D. Tex. Jan. 26, 2007). However, the plaintiff need not produce precise records of hours worked. The plaintiff need only "produce[] sufficient evidence to show the amount and extent of that [uncompensated] work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946) (*superseded by statute on other grounds as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289 (D.C. Cir. 1972)). The *Anderson* Court recognized that employees rarely keep such records themselves, and the employer in fact has the legal duty to maintain these records. *See id*. The employer must then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *See id*. at 688, 66 S. Ct. at 1192.

   Plaintiff has relatively precise records of the hours she worked in the personal calendar she kept. (Pl.'s Resp. to Defs' M. for Summ. J. Ex. 10.) Defendants submitted Plaintiff's Answers and Objections to Defendants' First Set of Interrogatories, in which Plaintiff states that she worked 1,660 hours of overtime, based on her calculations from her calendar. The affidavit of Harold Acord also provides some support for Plaintiff's claims—he states that he often found Krohn in her office during lunch or after hours. (Acord Aff. ¶ 4.) Krohn stated in her second affidavit that one of her supervisors mentioned that Krohn worked 12-hour days. (2nd Krohn Aff. ¶ 15.) Further, Krohn wrote in an e-mail to Kevin Weiderhold that she was working 50-hour weeks. (Pl.'s Resp. to Defs' M. for Summ. J. Ex. 10.) This evidence would allow the finder of fact to infer that Plaintiff worked in excess of 40 hours per week. It is undisputed that Defendants did not pay Plaintiff overtime for this work.

Defendants cite the "hours" column on Plaintiff's Earnings Statements as evidence that Plaintiff did not work more than 40 hours per week. (Defs.' M. for Summ. J. Ex. O.). These documents show that Plaintiff worked exactly 80 hours every two weeks. The Court finds it difficult to believe that, in that type of job, Plaintiff worked precisely the same number of hours each week. These summary records (as opposed to daily records) do not overcome Plaintiff's evidence. Defendants' Motion for Summary Judgment on the issue of whether Plaintiff was properly compensated is **DENIED**.

## VI. Retaliation

Defendants have moved for summary judgment on Plaintiff's retaliation claim. An employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). These claims are analyzed using the *McDonnell Douglas* framework. *See Kanida v. Gulf Cost Medical Personnel LP*, 363 F.3d 568, 577 (5th Cir. 2004). Therefore, a plaintiff must first establish a prima facie case of retaliation by showing "that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action following his protected activity; and (3) there was a causal connection between the activity and the adverse action." *James v. MedicalControl, Inc.*, 29 F. Supp. 2d 749, 753 (N.D. Tex. 1998). A constructive discharge is an adverse employment action. *See Conner v. Celanese, Ltd.*, 428 F. Supp. 2d 628, 638 (S.D. Tex. 2006).

To be engaged in a "protected activity," a plaintiff must have asserted his or her statutory rights under the FLSA. *See id.* Questioning a supervisor about exempt status does not constitute filing a complaint under the FLSA. *See id.* at 753. Krohn argues that she engaged in protected activity when her attorney sent a letter to Defendants on September 5, 2007, stating that

Defendants had unlawfully denied Krohn overtime compensation. (Defs' M. for Summ. J. Ex. E.) This informal complaint qualifies as protected activity. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).

Krohn resigned on September 27, 2007. ((Defs' M. for Summ. J. Ex. F.) She argues that Defendants reduced her compensation and took actions that made her working conditions intolerable, thus constructively discharging her. She also argues that these actions occurred so close in time to her attorney's letter to establish a causal connection.

The Fifth Circuit's standard for establishing constructive discharge is high. *See, e.g., Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994); *Conner,* 428 F. Supp. 2d at 639. The relevant factors are

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow*, 10 F.3d at 297. Krohn alleges that, after her attorney's letter, (1) she was locked out of her voicemail; (2) her assistant told callers that she did not have a voicemail system; (3) two buyers told her that John Mingarelli told them to talk to him, not to Krohn; (4) several of Defendants' employees refused to return her calls and e-mails; (5) she was unable to sign on to her computer on September 27, 2007; and (6) she was told that another salesperson would be working out of the Uptown Office and would split all BOYH sales, which she believed would reduce her compensation by 50%.

With respect to the problems with voicemail and computer access, Defendants have provided affidavits explaining that Krohn had ongoing problems with her voicemail access code

that Defendants remedied. (Gunther Aff. ¶ 3-4; Robinson Aff. ¶3-4.) Monta Robinson's affidavit also explains that on September 27, no employee could access e-mail because storms caused an interruption in internet access. (Robinson Aff. ¶ 8.) Because Krohn resigned that day, she was no doubt unaware of the nature of the problem. Occasional technical difficulties do not rise to the level of constructive discharge.

Krohn's allegations with respect to John Mingarelli's statements to the two buyers are unsupported by competent summary judgment evidence. The Court struck these statements from Krohn's affidavit as inadmissible hearsay in its Order of September 29, 2008.

The hiring of an additional salesperson also does not rise to the level of constructive discharge. Krohn states that she believed that this would reduce her compensation by 50%. However, she has not submitted evidence that her compensation actually decreased or that any supervisor confirmed that her compensation would decrease. It is possible that a new salesperson would have generated sales that would not have interfered with Krohn's sales. The Court does not question the sincerity of Krohn's belief, but without additional information on the anticipated effects of the new salesperson, this situation does not rise to the level of constructive discharge.

Plaintiff has not provided sufficient summary judgment evidence on the issue of constructive discharge to create a genuine issue of material fact. Defendants' Motion for Summary Judgment on Krohn's retaliation claim is **GRANTED**.

## VII.  Breach of Contract

Defendants have moved for summary judgment on Plaintiff's breach of contract claim. Krohn claims that she is entitled to her unpaid commissions or the pro rata share of her unpaid commissions based on Defendants' breach of contract, presumably her employment contract.

However, Krohn argues in her Response to Defendants' Motion for Summary Judgment that she and Defendants did not have a binding contract because the employment agreement was an illusory contract. Krohn offers no argument or evidence to rebut Defendants' evidence that they fulfilled their duties under the employment agreement. Therefore, no genuine issues of material fact exist as to this claim, and Defendants' Motion for Summary Judgment is **GRANTED** as to Krohn's breach of contract claim.

## VIII.  Quantum Meruit

Defendants have moved for summary judgment on Krohn's quantum meruit claim. Krohn argues that the employment agreement was not a valid contract, and that in the absence of an express contract, she is entitled to commissions that Defendants did not pay before she resigned. Specifically, she alleges that Defendants paid her through September 21, 2007, but that she was employed through September 27, 2007, and is therefore entitled to her commission draw while she was on vacation that week. In support of this argument, Krohn cites the employment agreement. However, Krohn argues that this agreement is not a binding contract. She also claims that Defendants owe her certain bonuses, and she supports this claim with her own affidavit and one e-mail in which she states that she is not being paid the bonus she expected. (Pl.'s Resp. to Defs' M. for Summ. J. Ex. 7, 11.)

A quantum meruit claim requires proof of valuable services rendered. *See Bashara v. Baptist Mem. Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (citing *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). Without a contract provision, the Court has no basis for awarding Krohn what is essentially paid vacation because Krohn did not provide valuable services to Defendants during that time. In the e-mail concerning her bonuses, Krohn states that Defendants intended to pay her a $1,500 bonus on

each of three houses, which was less than the 2% she expected. She was apparently paid the $1,500 bonuses. Therefore, she was paid for this work, even if the pay was not as much as expected. She offers no evidence of any commitment by Defendants to pay her a particular bonus. Krohn offers no evidence that Defendants failed to pay her regular commissions on sales closed before she resigned.

Krohn has failed to raise a genuine issue of material fact as to whether she is entitled to unpaid commissions under a quantum meruit theory. Defendants' Motion for Summary Judgment is **GRANTED** as to Krohn's quantum meruit claims.

## IX. Unjust Enrichment

Defendants have moved for summary judgment on Krohn's unjust enrichment claim. Krohn's unjust enrichment claim is essentially the same as her quantum meruit claim, and it fails for the same reasons. An unjust enrichment claim requires proof of valuable services rendered for which the plaintiff was not paid. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Krohn asks the Court to award her pay for a week of vacation and to award her certain bonuses. She offers no proof of valuable services rendered for which she was not compensated. Because Krohn has failed to raise a genuine issue of material fact as to her unjust enrichment claim, Defendants' Motion for Summary Judgment on this issue is **GRANTED**.

## X. ERISA

Defendants have moved for summary judgment on Krohn's ERISA claim. Krohn claims that Defendants interfered with her ability to enroll in Defendants' 401(k) plan in violation of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1140. 29 U.S.C. § 1140 prohibits an employer from discharging, fining, suspending, expelling, disciplining, or

discriminating against a participant or beneficiary of a qualified employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan" or under ERISA.

An employee must show one of the named adverse employment actions to sustain an interference claim and demonstrate that the employer took the action with the intent to interfere with the employee's benefits. *See Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003); *Van Zant v. Todd Shipyards Corp.*, 847 F. Supp. 69, 72 (S.D. Tex. 1994). Krohn alleges that Defendants interfered with her ability to enroll in Defendants' 401(k) plan by failing or substantially delaying responses to her requests for information about how to enroll. These actions do not constitute prohibited adverse employment actions, nor does Krohn offer any evidence that these failures to respond indicated an intent by Defendants to prevent her from enrolling in a 401(k). Krohn does not allege that her resignation related to the 401(k) plan.

Krohn has failed to raise a genuine issue of material fact as to two elements of her ERISA interference claim. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to this issue.

## XI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Defendants' Motion for Summary Judgment is **DENIED** as to the issues of exempt status and proper compensation under the FLSA. Defendants' Motion for Summary Judgment is **GRANTED** as to all Plaintiff's other claims. A Final Judgment will be issued in due course. Each Party is to bear its own costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

DONE this the **1st day of October, 2008, at Houston, Texas.**

                                               Samuel B Kent
                                               United States District Judge