IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH KROHN, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3885 |
| | § | |
| DAVID POWERS HOMES, INC. and | § | |
| DAVID POWERS, | § | |
|    Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Fair Labor Standards Act case was tried to the Court on May 26-27, 2009. Each party presented evidence through trial exhibits, live witnesses, and deposition testimony and exhibits. Counsel presented closing arguments on June 2, 2009, and later filed post-trial briefs.[1] The Court has federal subject matter jurisdiction, and there is no objection to personal jurisdiction over Defendants or to venue in this federal district.

Having heard and observed the witnesses who testified at trial, having considered the exhibits introduced by the parties, having reviewed all matters of

---

[1] Plaintiff filed an opening Post-Trial Brief [Doc. # 114], Proposed Findings of Fact and Conclusions of Law [Doc. # 115], and a Reply [Doc. # 119]. Defendants filed an opening Post-Trial Brief [Doc. # 116], Proposed Findings of Fact and Conclusions of Law [Doc. # 117], and a Reply [Doc. # 118].

record in this case, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## I.  FACTUAL BACKGROUND[3]

Defendant David Powers Homes, Inc. ("DPH") is a builder of homes in the Houston, Texas area. David Powers is the founder, co-owner, President, and Chief Executive Officer of DPH. Plaintiff was employed by DPH from May 1, 2005 until September 27, 2007, as a "Build on Your Homesite" sales consultant. The "Build on Your Homesite" concept allows private landowners to hire DPH to build a house on their site.

From May 1, 2005 until March 10, 2006, Plaintiff worked out of DPH's corporate office. On March 10, 2006, she began working out of and managing the Buffalo Speedway office. Her primary responsibility was to procure and work with clients for whom DPH was building custom homes on the clients' homesites.

---

[2]   The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law. To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

[3]   Additional factual findings will be set forth in the relevant "Findings of Fact" sections below.

After she had been working for DPH for well over two years and shortly before she left the employment of DPH in September 2007, Plaintiff claimed for the first time that she was entitled to unpaid overtime compensation. On November 16, 2007, Plaintiff filed this lawsuit alleging, among other claims, that she was entitled to unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

In an Order [Doc. # 65] entered October 1, 2008, Judge Samuel Kent granted summary judgment in favor of Defendants on Plaintiffs' retaliation, breach of contract, quantum meruit, unjust enrichment, and ERISA claims, leaving only the FLSA claim for trial.

## II.   PLAINTIFF'S FLSA CLAIM

Plaintiff claims that she worked more than forty (40) hours per week while employed by DPH and that she was not compensated for the overtime hours. Defendants argue that Plaintiff has failed to prove her FLSA claim for unpaid overtime.

### A.   Conclusions of Law

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one

and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Although an employer who knows that an employee is working overtime cannot permit that employee to perform overtime work without paying overtime compensation, "if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)). An employee is not entitled to overtime compensation for activities "undertaken for [the employee's] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 742 (S.D. Tex. 2006) (Rosenthal, J.) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir. 1984)).

An employee bringing an FLSA action for unpaid overtime compensation "must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill*, 433 F.3d at 441. An employee meets this burden of proof by proving that she "in fact performed work" for which she did not receive overtime compensation and by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson v.*

*Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). "Evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked by each employee." *Colindres*, 427 F. Supp. 2d at 752-53 (internal quotations omitted) (citing *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 598 (5th Cir. 1979)).

Where, as here, an employee is paid commission-based wages, the wage rate is calculated by dividing the total compensation for the workweek "by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek." 29 C.F.R. § 778.118; *Buckley v. Hoofnagle*, 2008 WL 4459047, *3 (M.D. Fla. Oct. 3, 2008). The employee's overtime compensation is one-half the wage rate as calculated above for each hour of overtime worked in the workweek. *Id*.

The statute of limitations for an FLSA claim for unpaid overtime compensation is two years. 29 U.S.C. § 255(a). In the case of a willful violation, the limitations period is extended to three years. *Id.* Plaintiff filed this lawsuit on November 16, 2007, and in her Post-Trial Brief she calculated her damages based on the two-year statute of limitations.[4] Consequently, if Plaintiff proved that she was entitled to

---

[4] For the reasons discussed more fully below in the section on Liquidated Damages, the Court would not find that any violation of the FLSA by Defendants in this case was a willful violation.

unpaid overtime compensation, her compensation would be calculated beginning November 16, 2005.

### B.  Findings of Fact

Plaintiff's evidence does not persuade the Court that she worked overtime hours in any given workweek or that DPH knew about any overtime hours Plaintiff may have worked.  Even if Plaintiff were able to prove her FLSA unpaid overtime compensation claim, her evidence does not establish a calculable amount of damages because she has no reliable evidence of the number of hours she allegedly worked overtime and has no evidence from which the Court could calculate the hourly wage rate for Plaintiff, who was paid on a commission basis.

*Hours Worked*. -- Plaintiff claims that she worked in the office from 7:00 or 7:15 a.m. each work day, and that she often worked in the office until 6:30 or 7:00 p.m. each work day.  The Court finds Plaintiff's evidence on this issue unpersuasive.  Although Plaintiff may during some weeks have been in the office more than forty hours, there is no probative evidence that Plaintiff worked more than forty hours in any specific workweek.

Plaintiff relies heavily on diary entries she made each day.  The Court held that the diary entries are inadmissible hearsay and Plaintiff failed to identify any exception in the Federal Rules of Evidence that would allow their admission into evidence.  The

Court allowed Plaintiff an opportunity to research the various hearsay exceptions to determine whether any might apply to the diary entries. It appears that Plaintiff has abandoned any attempt to introduce the diary entries into evidence, having failed to argue in the post-trial briefing that any exception applies and, instead, arguing that the diary entries refreshed Plaintiff's recollection. Plaintiff did not, however, testify at trial that the diary entries refreshed her recollection and she did not testify, with a refreshed recollection or otherwise, in other than the most general terms that she worked approximately "an average of 54.3 hours per week."

Even were the Court to allow introduction of the diary entries into evidence, the Court finds that they have very limited probative value. Plaintiff testified that the diary entries were not made for any business purpose, but were simply part of a daily log of her activities. Plaintiff also testified that she "rounded" the times she arrived at work and the times she left work for the day. Moreover, the diary entries and Plaintiff's general testimony regarding her hours at the office are refuted by records from the Harris County Toll Road authority which establish times that Plaintiff's vehicle entered the toll road system. The records establish, for example, that Plaintiff's vehicle frequently entered the toll road system much later than Plaintiff claims to have arrived at work. The Court does not credit Plaintiff's testimony that

it was always someone else driving her car when the toll road records show that she was not at the office when she claims to have been there.

Plaintiff's reliance on her cell phone records are also unpersuasive. For those days on which there were cell phone calls before 8:00 a.m., there were no calls late in the day. Similarly, for those days on which there were cell phone calls late in the day, there are no calls before 8:00 a.m. Consequently, although the cell phone records may indicate that Plaintiff at times began working by accepting work-related cell phone calls early and at other times continued to receive work-related cell phone calls after regular business hours, they do not provide probative evidence that she worked more than forty hours in any workweek. This is particularly true in this case because Plaintiff was authorized to schedule her own work week as long as either she or her assistant was in the office during posted office hours. Indeed, Plaintiff acknowledged that she sometimes left the office during business hours for personal errands and sometimes revised her work schedule for personal reasons. This further undercuts the reliability of Plaintiff's estimates of the length of her average workweek.

Even were the Court to find that Plaintiff was in the office more than forty hours in any specific workweek, the Court would not find that Plaintiff was always performing work for which overtime compensation would be required. Plaintiff admitted at trial that no DPH employee requested that she come into the office early

or stay there late. Plaintiff testified that she arrived early because she took her daughter to school and found it more convenient to go directly to the office rather than return home first. Plaintiff testified that she also performed limited work in connection with a personal patent application, scanning and emailing information from her work computer.

Plaintiff's evidence fails to persuade the Court that she worked the overtime hours that she claims.

***Defendants' Knowledge*.** -- Defendants' witnesses testified that they were unaware that Plaintiff claimed to be working overtime and to be entitled to overtime compensation until they received a letter from Plaintiff's attorney in September 2007. Even if the Court were to find that Plaintiff worked more than forty (40) hours in specific workweeks, Plaintiff's evidence does not persuade the Court that DPH was aware that Plaintiff worked the overtime hours she now claims. DPH had a written policy that any employee was required to obtain prior approval before working overtime, and it is undisputed that Plaintiff neither requested nor obtained such permission. As was discussed above, Plaintiff's cell phone records indicate only that there was a cell phone call between Plaintiff and some other DPH employee -- sometimes early in the morning and sometimes later in the evening. The records do not prove or even suggest that DPH was aware that Plaintiff was working more than

forty hours in any particular workweek. Although Kevin Wiederhold, Plaintiff's supervisor, came by the Buffalo Speedway office occasionally, Plaintiff and her assistant were the only employees working full time in that office. Plaintiff and her assistant had different days off and, therefore, Plaintiff was often the only DPH employee in the Buffalo Speedway office.

      Plaintiff relies heavily on a heated email exchange [Plaintiff's Exh. 3] in which she claimed to be working 50 hours each week. The email began on March 25, 2006, when Wiederhold asked the sales representatives to bring their "prospect cards" to the next sales meeting. On March 26, 2006, Plaintiff asked what "prospect cards" were, and Wiederhold responded on Monday, March 27, 2006, that it "sounds like we are identifying your deficiency real quick." Plaintiff was offended by the perceived criticism and responded with a very lengthy email complaining about various "deficiencies" in her work situation, including being in the new Buffalo Speedway office for three weeks without a fax or computer internet connections and her view that "very few people inside the loop have heard of David Powers Homes." As item #5 of five, Plaintiff wrote "I work an average of 50 hours per week for David Powers Homes and am highly offended that you gave me such a flip response to a legitimate question." Wiederhold did not respond to this general, unsupported, assertion that Plaintiff was working an average of 50 hours per week. Indeed, there is no evidence

10

that he actually read that far down into Plaintiff's long, acrimonious communication. Even if he read the statement in section # 5 of the email, based on its tone and read in context, it is unclear from the email whether Plaintiff is making a factual statement or is, instead, injecting a bit of hyperbole in an attempt to obtain Wiederhold's attention and sympathy. There is no evidence that Plaintiff ever clarified that she intended to put DPH on notice that she had worked overtime hours for which she was entitled to compensation. She did not reiterate her overtime claim or give any detail regarding her overtime hours at the sales meeting that week or at any other time between March 27, 2006 and her attorney's September 2007 letter.

Even if the Court were to find that Plaintiff worked more than forty hours in one or more workweeks, the Court would find that neither Plaintiff's isolated comment in a fit of pique to her supervisor nor any other conduct by Plaintiff made Defendants aware that Plaintiff had worked or continued to work overtime in any particular week.

***Calculation of Damages*. --** Even if Plaintiff had proven that she worked overtime hours and that DPH was aware that she was working overtime, she has not presented evidence from which the Court could calculate her damages by any method other than unsupported guesswork. As was discussed above, Plaintiff has presented no evidence other than her statement that she worked an "average of 54.3 hours per

week," but it is unclear whether that average is based on the relevant two-year time period or based on the entire time Plaintiff worked for DPH. The Court does not credit Plaintiff's unsupported statement regarding the number of overtime hours she worked.

Even were the Court to find that Plaintiff worked an average of 54.3 hours per week, the overtime compensation to which she would be entitled is calculated on an hourly wage basis. Plaintiff was paid on a commission basis. She was paid a "draw" of $2,000.00 every two weeks, which would be offset by future commissions she earned. Plaintiff presented evidence regarding what she was paid by DPH, but she did not know whether the amounts represented the amount of her draws or the amount of her commissions.

Without competent evidence of the number of hours worked or the amount she earned (from which to calculate the hourly wage rate), the Court cannot calculate the unpaid overtime compensation based on anything other than sheer speculation.

*Summary*. -- Although it is possible that Plaintiff worked more than forty hours in some workweeks, Plaintiff has not proven that she did so in any specific weeks. The Court is also unpersuaded that DPH was aware of any weeks in which her hours exceeded forty. Plaintiff also has failed to present evidence from which the Court can calculate her unpaid overtime, and any attempt by the Court to award any specific sum

of overtime compensation would be speculative at best. As a result, Plaintiff has failed to satisfy her burden of proof on her FLSA unpaid overtime compensation claim.

## III.   PLAINTIFF'S CLAIM AGAINST DAVID POWERS, INDIVIDUALLY

Plaintiff argues that David Powers, individually, is also liable under the FLSA for the unpaid overtime compensation due to her. Even were the Court to hold that Plaintiff was entitled to recover overtime compensation, the Court would hold that David Powers is not individually liable for payment of that compensation.

### A.   Conclusions of Law

An individual cannot be held individually liable under the FLSA unless he is an "employer" as defined by the Act. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d 1150, 1160 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1)). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an individual falls within this definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez*, 515 F.3d at 1160. It is important to consider whether the individual was "principally in charge of directing employment practices, such as hiring and firing employees, . . . and setting employees' wages and schedules" to the extent that he was "instrumental in 'causing'

the corporation to violate the FLSA." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007).

### B. <u>Findings of Fact</u>

The Court finds David Powers's testimony to be credible. During the relevant time period, David Powers did not act directly or indirectly for DPH *in relation to* Plaintiff but was, instead, heavily involved in an auto racing business. Although he was an owner and officer of DPH, he did not generally act for DPH *in relation to* Plaintiff. He never directed her work schedule, did not supervise her work, and did not exercise control over significant aspects of Plaintiff's day-to-day work activities. Indeed, there is no probative evidence that David Powers was aware of Plaintiff's work schedule. Consequently, even if Plaintiff had succeeded in proving that DPH failed to pay her overtime compensation to which she was entitled for any particular weeks, she has not satisfied her burden of proving that David Powers exercised such control over the day-to-day activities of DPH during the relevant time period that he personally would be liable for the alleged FLSA violation.

## IV. <u>DEFENDANTS' CLAIMED EXEMPTION</u>

Defendants claim that, even if Plaintiff otherwise proved her claim for unpaid overtime compensation, she is exempt from the FLSA because she was engaged in

"outside sales." Plaintiff argues that she performed her duties in a manner that did not satisfy the requirements for the "outside salesman" exemption.

### A.     Conclusions of Law

The FLSA specifically excludes from its overtime provisions an employee who is employed as an outside salesman. 29 U.S.C. § 213(a)(1). An initial requirement for an "outside salesman" exemption is that the employee "is employed for the purpose of and . . . is customarily and regularly engaged away from his employer's place or places of business." *See* 29 U.S.C. § 541.500. Exemptions are narrowly construed, and the employer has the burden to prove that an exemption under the FLSA applies. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006); *Mortellaro v. Transwestern Publ'g Co.*, 2005 WL 1168458, *2 (S.D. Tex. May 17, 2005) (referring specifically to "outside salesman" exemption).

### B.     Findings of Fact

This case presents a unique situation regarding the "outside salesman" exemption. The Court finds that Plaintiff was hired as an outside sales representative with job responsibilities that generally should require the employee to be customarily and regularly outside the office. Specifically, both David Powers and former DPH sales consultant Harold Eugene Acord testified that DPH anticipated that a sales

representative with DPH often would leave the office to meet clients, to visit homesites with clients before house plans were finalized to determine house placement on the lot, to meet with realtors, to show clients existing homes built by DPH to enable the client to envision the home on his homesite, and perform other job responsibilities. *See, e.g.*, Acord Deposition Testimony, p. 53 (testified that most of his work time was spent outside the office); p. 55 (estimated that he spent 80% of his work time outside the office). Based on the unwritten criteria for the sales representative position commonly accepted within DPH, it appears that the sales consultant position qualifies for the "outside salesman" exemption.

The Court finds, however, that Plaintiff did not perform the sales position in the manner anticipated by DPH. Instead, Plaintiff stayed mainly in the office, assigning tasks outside the office to her assistant, leaving clients to select design features for their homes independently, and relying on other DPH employees to conduct evaluations of the homesites. There is no evidence that DPH objected to Plaintiff performing her work in this manner, and it is undisputed that Plaintiff was successful in her work for DPH.

Because Plaintiff performed her job in a manner that did not involve her being customarily and regularly away from the office, Defendant has failed to prove that she

is an exempt "outside salesman" for purposes of the FLSA overtime compensation requirements.

### V.    PLAINTIFF'S CLAIM FOR LIQUIDATED DAMAGES

An employer who violates the overtime provisions of the FLSA can be liable for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court has discretion to decline to award liquidated damages if it finds that "the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Singer v. City of Waco*, 324 F.3d 813, 822-23 (5th Cir. 2003) (citing 29 U.S.C. § 260).

Even if the Court were to find that Plaintiff proved her entitlement to unpaid overtime compensation, the Court would find that Defendants acted in good faith and had reasonable grounds to believe both that Plaintiff was not working overtime and that she was an outside salesman exempt from the FLSA provisions for overtime compensation. As was discussed above, DPH hired Plaintiff to be an outside sales representative. By January 2007, the United States Department of Labor had issued two written opinions stating that persons in similar positions were exempt from the FLSA overtime compensation requirements under the "outside salesman" exemption.

*See* Department of Labor Letter Opinions dated January 25, 2007, FLSA2007-1 and FLSA2007-2.  DPH reasonably anticipated that Plaintiff would customarily and regularly spend a large part of her work day outside the office.  Although Plaintiff managed to perform her work successfully without leaving the office by assigning the outside tasks to her assistant and other DPH employees, the position of sales representative at DPH generally required a significant amount of work outside the office.

DPH believed in good faith and on reasonable grounds that Plaintiff was an exempt employee for purposes of the FLSA overtime compensation provisions.  As a result, the Court would hold that Plaintiff is not entitled to liquidated damages even if she had proven an FLSA violation.

## VI.     CONCLUSION

Having carefully considered the evidence presented at trial and having applied the governing legal standards, the Court holds that Plaintiff has failed to prove by a preponderance of the evidence that she worked overtime in any particular week while employed by DPH.  The Court also holds that Plaintiff has failed to prove that DPH knew of any overtime she may have worked, and has failed to prove the amount of overtime compensation she would be entitled to had she proven that she worked overtime.

For purposes of a complete record, the Court also concludes that Plaintiff failed to establish a factual basis for the imposition of FLSA liability against David Powers individually or for an award of liquidated damages.  The Court also concludes that Defendants failed to prove that the "outside sales" exemption applies.  Accordingly, it is hereby

**ORDERED** that judgment is entered in favor of Defendants David Powers Homes, Inc. and David Powers.  The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **30th** day of **June, 2009**.

Nancy F. Atlas
United States District Judge